UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARRELL GOSTON,

                    Petitioner,

     -vs-

ISRAEL RIVERA, Superintendent,

                    Respondent.
_____

**DECISION AND ORDER**
**No. 05-CV-6510(VEB)**

## INTRODUCTION

On or about September 1, 2005, petitioner Mark Goston ("Goston") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court on two counts of first degree robbery (N.Y. Penal Law § 160.15(2), (4)) and one count of third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(4)). Goston sought and received permission from the Court (Siragusa, D.J.) to file an amended petition, which was filed on or about August 28, 2006. *See* Docket No. 14. Respondent submitted answers to both the original petition and amended petition. Goston filed a traverse in reply to respondent's answer to the amended petition. On October 30, 2006, the parties consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c). *See* Docket No. 17.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Goston was arrested, tried, and convicted of robbing Magic Touch Clothing, a small store near the corner of East Delevan and Carl Streets in the City of Buffalo.  At Goston's jury trial in Erie County Court (DiTullio, J.), store owner Jesse Stines ("Stines") testified that at about 6:00 p.m. on the evening of July 28, 1999, he and his employee Calvin Speight ("Speight") were

working at the store when Goston walked in. Stines recalled that Goston was wearing a grey t-shirt. T.66, 119.[1]

While Stines was helping two other customers, Speight approached Goston and asked if he needed help. T.63, 118, 127. Goston replied that he was just browsing, so Speight sat down and began eating his dinner. T.120, 127, 143. The other customers left after making purchases. Goston also seemed to be leaving, but then he turned and put a gun to Speight's face and demanded to know where the money was. T.64-65, 67, 87-88, 120-22. Goston ordered Speight and Stines to lie down on the floor, and went over to the cash register, opened it, and removed the cash. T.67, 93, 121-22. While Goston was near the register, Speight got up and ran out the door, screaming for help. T.67-68, 123.

Goston then approached Stines, put the gun to his head, and demanded to know where the rest of the money was. T.68. Stines handed over his wallet, and Goston left the store. T.68, 94. Stines was unsure how much money Goston took from the register, but believed it was between thirty-eight and sixty dollars. T.73.

Meanwhile, Speight had flagged down a police car less than a block away from the store and informed the officers about the robbery. T.123, 199. As Speight was describing Goston's clothing to Officer Hosking, he saw Goston walk out of the store. T.123, 180-81. Speight pointed at Goston, and told Officer Hosking that he was the robber. T.124. Officer Hosking saw the person at whom Speight was pointing run down East Delevan and turn onto Carl Street. T.181.

Stines had followed Goston out of the store and saw him make two left turns, ending up in the area behind the store. T.69. At that time, no officers were giving chase. T.100. Fearful that

---

[1]     Citations to "T.___" refer to the trial transcript.

Goston would see him, Stines returned to the store. T.70.

By this time, Speight also had returned to the store, T.152, and Officer Hosking was chasing Goston. However, Officer Hosking lost sight of him in the residential yards behind the store. T.183. When other officers arrived at the store, Stines informed them that Goston was in the backyards behind the store. T.70, 102.

Officer Heitzhaus testified that after he arrived to the store, he proceeded to run through an alleyway next to the store, where he found a grey t-shirt on the other side of a chain-link fence. T.238. After speaking to some children, who told him that a man had taken off the t-shirt as he ran by, Officer Heitzhaus broadcast that the suspect was running on Deerfield Street without a shirt. T.238-40, 273, 281.

Edward Carney ("Carney"), a public safety officer with the Buffalo Municipal Housing Authority ("BMHA"), had heard the earlier police transmissions about the robbery. Moments after driving past a shirtless black male, he heard that the robbery suspect was no longer wearing a grey t-shirt. T.298-99. Carney turned his car around and found Goston, trying to get into a house on Leroy Avenue near the corner of Grider Street, but the door was locked. T.301. Carney observed that sweat was dripping from Goston's face, and that he was out of breath. T.300-01. At about that time, Officers Hosking and Heitzhaus arrived, and also observed Goston sweating profusely and breathing heavily. T.186, 241-42. Goston was apprehended about one mile from the store that was robbed.

Goston was taken into custody and placed in the back of the BHMA patrol car. Carney drove him back to the store, whereupon Stines ran up to the vehicle, and, unprompted, identified Goston as the robber. T.71-72, 186-87, 243-44, 304-05.

Officer Heitzhaus returned to the alley next to the store and, thirty feet from where he had found the grey t-shirt, he discovered a loaded handgun and a wallet. T.245-46. The wallet and the gun were within eight inches of each other, T.249, and the wallet contained Stines' credit card and driver's license. T.72, 108.

At trial, Stines testified that the gun was the same color and style as the one the perpetrator had used to rob the store. T.109. Both Speight and Stines identified Goston as the robber at trial.

Goston did not testify at trial. However, his father, Douglas Goston, testified that he saw his son on the 28th of July at about the time he was apprehended by the police. Douglas Goston stated that he was sitting in a car across the street from 435 Leroy Avenue, the house into which Goston was trying to gain entry at the time he was arrested. Douglas Goston stated that Goston's mother lived there. According to Douglas Goston, as his son approached the vehicle, Goston appeared to be "calm" and "comfortable," and he was walking. T.327. He asked Goston where he was going, and Goston replied that he was going to his mother's house. T.328.

The jury returned a verdict convicting Goston on all three counts submitted to it (two counts of first degree robbery and one count of third degree criminal possession of a weapon). Prior to sentencing, defense counsel moved to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.30 on the ground that the prosecutor had violated his discovery obligations under New York state law by failing to disclose certain grand jury minutes prior to trial. The trial court denied the application and sentenced Goston as a second felony offender to concurrent sentences of imprisonment, the longest of which was a determinate term of fifteen years.

On direct appeal, the Appellate Division, Fourth Department, unanimously affirmed his conviction but concluded that the indeterminate sentence of three and one-half to seven years imposed on the criminal possession conviction was illegal. Because the crime at issue was a violent felony offense, and Goston was sentenced as a second felony offender, the court was mandated to impose a determinate sentence. *See* N.Y. Penal Law §§ 70.02(1)(c), 70.06(6), 265.02(4). The court accordingly modified the judgment by vacating the sentence imposed on the weapons possession conviction, and remitting the matter to the County Court for re-sentencing. The re-sentencing did not affect the overall length of Goston's sentence, as the sentence on the weapons possession charge was less than his longest sentence, which was fifteen years. Leave to appeal to the New York Court of Appeals was denied.

Goston filed a collateral motion under C.P.L. § 440.10 on February 22, 2002, alleging, *inter alia*, that trial counsel had not provided effective assistance. The trial court denied the motion on July 26, 2002. Goston subsequently sought reconsideration of the denial, which also was denied on August 18, 2005. This habeas petition was filed while Goston was awaiting a decision on his motion for reconsideration.

For the reasons set forth below, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## DISCUSSION

**Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his Federal constitutional claim resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**Merits of the Petition**

**1.      Suggestiveness of out-of-court identification procedure**

Goston contends that Stines' out-of-court identification of him was irreparably suggestive

and not admissible, and that it tainted and rendered invalid his in-court identification of Goston

as well.

The admission of identification testimony violates due process only when the

identification is "'so unnecessarily suggestive and conducive to irreparable mistaken

identification that [the defendant] was denied due process of law.'" *United States v. Bautista*, 23

F.3d 726, 729 (2d Cir.) (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d

1199 (1967)), *cert. denied*, 513 U.S. 862, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *see also*

*Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

In order to determine whether identification testimony is constitutionally valid, the court

first must determine whether the procedure by which the initial identification was obtained was

impermissibly suggestive. *Bautista*, 23 F.3d at 729-30. Even where the procedure is

unnecessarily suggestive, exclusion of the identification is not necessarily required. The court

must determine "'if, when viewed in the totality of the circumstances, [the out-of-court

identification] possesses sufficient indicia of reliability,'" notwithstanding the suggestiveness of

the procedure. *Id.* (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*,

500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991)); *see also Manson*, 432 U.S. at 114

("[R]eliability is the linchpin in demonstrating the admissibility of identification testimony [.]"). Thus, the central inquiry is "whether under the totality of the circumstances the identification was reliable." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In the absence of either element, there is no constitutional error. *See Bautista*, 23 F.3d at 729-30.

The Supreme Court has articulated five factors to be considered when evaluating the reliability of identification procedures: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. at 199-200; *see also Manson v. Brathwaite*, 432 U.S. at 114. A reviewing court must balance these five factors against the "corruptive effect" of the suggestive identification procedure itself in order to determine whether the identification testimony should have been suppressed. *Manson*, 432 U.S. at 114.

Turning first to the suggestiveness of the identification procedures, at the suppression hearing, Officer Heitzhaus testified that as the BHMA patrol car rolled to a stop outside the store, Stines ran up to the car and spontaneously identified Goston as the robber even before the police had a chance to remove Goston from the backseat or informed Stines of the identification procedure. H.21-22, 28-29.[2] The suppression court ruled that the police did not do anything unduly suggestive to prompt Stines to identify Goston and therefore Stines' identification of Goston was admissible at trial, and the Appellate Division upheld this ruling on direct appeal. *People v. Goston*, 9 A.D.3d 905, 906, 779 N.Y.S.2d 699 (App. Div. 4th Dept. 2004) ("[T]he

---

[2]      Citations to "H.__" refer to the transcript of the pre-trial suppression hearing.

[suppression] court properly determined that the showup identification, conducted in geographic and temporal proximity to the crime, was not unduly suggestive[.]") (citations omitted).

Federal courts have differed as to whether similar circumstances are unduly suggestive. The practice of showing a suspect singly to a witness for the purpose of identification shortly after a crime—commonly known as a "show-up"—is not inherently unconstitutional. However, as the Supreme Court noted in *Stovall v. Denno*, the "show-up," or "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302. A show-up, as opposed to a line-up or photo array, has been described as "inherently suggestive" because the defendant is presented singly to the witness by the police. *Brisco v. Phillips*, 376 F. Supp.2d 306, 313 (E.D.N.Y. 2005) (citing *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1265 (8th Cir. 1996)).

The Second Circuit has held that where, as here, the police are making a prompt and reasonable effort to identify the perpetrator, handcuffs and police custody are "necessary incidents of an on-the-scene identification" that do not "render the pre-trial identification procedure unnecessarily suggestive." *Bautista*, 23 F.3d at 730 (show-up not unnecessarily suggestive where defendant was presented to the witness "in handcuffs; at night; in the custody of police officers; with his face lit by flashlights; and in the presence of [an officer] who, each time [the witness] identified a suspect, radioed to his fellow officers, 'it's a hit'"); *see also United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir.) (identification proper where suspects were brought to victim who was sitting in a police car), *cert. denied*, 506 U.S. 980 (1992); *United States v. Sanchez*, 422 F.2d 1198, 1199-1200 (2d Cir. 1970) (police drove suspects by witnesses at the scene of the crime); *United States v. Ortiz*, 2000 WL 37998, at *1 (S.D.N.Y. Jan. 18, 2000)

(defendants were in handcuffs, standing next to a marked police car, and accompanied by uniformed police officers); *Torrez v. Sabourin*, 2001 WL 401444, at *5 (S.D.N.Y. Apr. 19, 2001) (identification not unduly suggestive where complainant identified defendant while he was on his hands and knees surrounded by police officers and patrol cars). *But see Van Pelt v. Keane*, No. CV-90-2072, 1991 WL 81973, *6 (E.D.N.Y May 6, 1991) ("In this case, defendant was identified by two witnesses at the scene of the crime. At the time he was identified he was seated in the back of a police car, alone, handcuffed, having just been captured during a search the witnesses knew the police were conducting for the robbers. There is no question that this "show-up" was unnecessarily suggestive.") (citing *Archuleta v. Kerby*, 864 F.2d 709, 710-11 (10th Cir.1989) (holding that show-up identification of defendant seated in handcuffs in rear of police car among uniformed officers was unnecessarily suggestive); *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir.1990) (concluding that show-up identification of defendant after removal from FBI vehicle in handcuffs at scene of crime was unnecessarily suggestive)).

Even if the identification were unduly suggestive because Goston was seated in the back of the housing authority patrol car, such a finding would not necessarily require exclusion. The Court must proceed to examine the reliability of the identification in light of the *Neil v. Biggers* factors discussed above. With respect to the witness' level of certainty, Stines clearly exhibited a high level of certainty when he identified the petitioner–he ran up to the patrol in which petitioner was seated, looked in and without delay identified him as the robber. At trial, Stines also unequivocally identified Goston. Stines also had ample time to observe Goston during the robbery; he testified that Goston was in the store for about eight minutes, that it was a bright, sunny day outside, and the store was brightly lit. T.65. Stines said that he had a clear view of

Goston's face during the robbery. T.66.  The elapsed time between crime and confrontation, which was roughly thirty-five minutes, is a fairly short interval of time, adding to the reliability of the identification. *See Archuleta v. Kerby*, 864 F.2d at 712 (witnesses identified Archuleta approximately thirty minutes after the crime; finding that this was "a very short interval of time, which add[ed] to the reliability of the identification"); *United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir. 1992); *Dunnigan v. Keane*, 137 F.3d 117, 129 (2d Cir. 1998) ("Further, the interval between the crime and the pretrial identification was short, just three days, making it unlikely-especially in light of the nature of the confrontation-that Nuchereno had forgotten what the robber looked like."); *United States v. Shoels*, 685 F.2d 379, 385 (10th Cir. 1982) (holding that two month interval was not a substantial amount of time which would impede identification), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983); *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988) (finding that identification that took place over a year after crime was reliable); *United States v. Wilson*, 787 F.2d 375, 386 (8th Cir.) (four months was not too long), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986); *United States v. Burke*, 738 F.2d 1225, 1229 (11th Cir. 1984) (two months was not too long). The Court observes that this interval is substantially shorter than the seven months in *Neil v. Biggers* and the two days in *Manson v. Brathwaite*, time-periods which the Supreme Court held were not so long as to negate a finding of reliability.

After weighing the factors indicative of the identification's reliability weighed against its suggestiveness, the Court finds that they provide sufficient assurance of reliability that based "on the totality of the circumstances," the pre-trial identification of Goston was not "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process

of law." *Stovall v. Denno*, 388 U.S. at 301-02. Accordingly, habeas relief will not issue on this claim.

**2.      Erroneous *Sandoval* ruling by the trial court**

A hearing was held pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), to determine the extent to which Goston–should he decide to testify–could be cross-examined regarding prior crimes and bad acts bearing on his credibility, veracity or honesty. The trial court ruled that the prosecution could cross-examine Goston concerning a 1991 conviction for attempted criminal possession of a forged instrument and a 1992 robbery conviction. Goston argues that the trial court's ruling was erroneous and prohibited him from taking the stand and testifying in his own behalf. The Court appreciates the logic of Goston's argument, but his failure to testify at trial precludes habeas review of this claim. *See Grace v. Artuz*, 258 F. Supp.2d 162, 171-72 (E.D.N.Y. 2003) (in absence of petitioner taking the stand to testify at trial, "petitioner's claim as to the impropriety of the *Sandoval* ruling [did] not raise a constitutional issue cognizable on habeas review") (citing *Carroll v. Hoke*, 695 F. Supp. 1435, 1440 (E.D.N.Y. 1988) *aff'd*, 880 F.2d 1318 (2d Cir. 1989) (citing *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (holding that in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify")); *accord Brathwaite v. Duncan*, 271 F. Supp.2d 400, 401 (E.D.N.Y. 2003) (holding that *Sandoval* claim not cognizable on federal habeas review where petitioner did not testify at trial).

In *Luce*, which was a federal direct appeal, the Supreme Court held that an *in limine* ruling allowing impeachment of a defendant by use of a prior conviction did not present a question of constitutional dimension and was not reviewable on appeal unless the defendant

testified. *Luce v. United States*, 469 U.S. at 43. The Supreme Court declared that any possible harm flowing from a trial court's *in limine* ruling permitting impeachment by a prior conviction was "wholly speculative" and   observed that the ruling is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." *Id.*

Although the present case involves the collateral review of a state trial court's *Sandoval* ruling and Luce involved the direct review by a Circuit Court of Appeals of a federal trial court's ruling pursuant to Rule 609 of the Federal Rules of Evidence, the rationale of *Luce* is equally apposite. Both a *Sandoval* ruling and a Rule 609 ruling seek to balance the prejudicial impact of the prior conviction against its value as impeachment testimony, *compare People v. Sandoval*, 357 N.Y.S.2d at 853-54, 314 N.E.2d at 416-17 with Fed. R. Evid. 609, and in both cases the defendant's failure to testify makes it impossible to test the propriety of the ruling. *See Luce*, 469 U.S. at 43  ("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.") (footnote omitted). Finally, "[b]ecause an accused's decision whether to testify "seldom turns on the resolution of one factor," *New Jersey v. Portash*, 440 U.S. 450, 467, 99 S. Ct. 1292, 1301, 59 L. Ed.2d 501 (1979) (Blackmun, J., dissenting), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Luce*, 469 U.S. at 43.  For the foregoing reasons, the Court dismisses Goston's claim of an erroneous *Sandoval* ruling as not cognizable

-12-

on federal habeas review.

**3.      Erroneous denial of motion to dismiss**

At the close of the prosecution's case, trial counsel made a general motion to dismiss the

indictment. T.320. On direct appeal, appellate counsel argued that there was insufficient

evidence to prove that he possessed a weapon and that the identification evidence was not

reliable enough to support the robbery conviction. The prosecution argued, and the Appellate

Division agreed, that Goston had failed to preserve for review his contention that the conviction

is not supported by legally sufficient evidence. *People v. Goston*, 9 A.D.3d at 906, 779 N.Y.S.2d

699 (citing *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y. 1995)

(holding that where a defendant seeks to argue on appeal that the People have failed to establish

the defendant's knowledge of the weight of drugs, preservation of that contention requires an

appropriately specific objection; rejecting defendant's contention that a general motion to

dismiss the indictment based on lack of sufficient evidence was sufficient to preserve claim).

Respondent argues that Goston's claim is procedurally barred due to the Appellate Division's

reliance upon *People v. Gray* to dismiss Goston's claim as unpreserved.

Federal habeas corpus review of a state conviction is prohibited if a state court judgment

is based on an "adequate and independent state ground," such as a state procedural bar rule.

*Harris v. Reed*, 489 U.S. 255, 260-61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). However, rather

than analyzing whether the state ground in Goston's case was "adequate" to support the

judgment, this Court will proceed to analyze the merits of Goston's evidentiary claim, since it is

more easily disposed of on that basis. *See Boddie v. New York State Div. of Parole*, 288 F.

Supp.2d 431, 439 (S.D.N.Y. 2003) (declining to resolve procedural issue of mootness before

proceeding to merits; noting that "in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit") (quotation omitted).

Upon this Court's review of the record, there is ample evidence to establish the jury's verdict of guilty on both counts. A district court should grant habeas corpus relief only if it finds, upon the record evidence adduced at trial, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord Wright v. West*, 505 U.S. 277, 296-97, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). The evidence must be reviewed as a whole in the light most favorable to the prosecution. *Id.* at 319; *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). The resolution of issues of credibility, which is central to the adjudication of petitioner's challenge to the legal sufficiency of the evidence, is exclusively the province of the jury, whose determination may not be overturned lightly. *See United States v. Shulman*, 624 F.2d 384, 388 (2d Cir.1980); *United States v. Taylor*, 464 F.2d 240, 245 (2 Cir. 1972); *United States v. Weinstein*, 452 F.2d 704, 713-14 (2d Cir. 1971), *cert. denied*, 406 U.S. 917 (1972)); *United States v. Khan*, 53 F.3d 507, 514 (2d Cir.1995) (stating that "the credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with our own"); *Maldonado v. Scully*, 86 F.3d at 35 (stating that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal"; reviewing court must "defer to the jury's assessments of both of these issues"); *Mallette v. Scully*, 752 F.2d 26, 31 (2d Cir. 1984) ("In making this assessment [of legal sufficiency of the evidence] the Court must defer to the jury's determination regarding conflicting evidence, the weight given to such evidence, the

credibility accorded to the testimony of witnesses, and the inferences drawn from the evidence."). Thus, the pertinent inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

As to Goston's claim that the identification evidence was insufficient, the Court notes that "[t]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979); *see also Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 n .21 (1982) (noting that the due process requirements of *Jackson v. Virginia* are clearly met where the prosecution presents eyewitness testimony about the crime). Here, both Stines and Speight identified Goston at trial as the man who had entered the clothing store, put a gun to Speight's head, demanded money, and removed money from the cash register, and who then the gun to Stines' head, took his wallet, and ran out of the store. The jury heard Stines' initial description of the perpetrator, which included his sex (male), race (black), height (5'7") and clothing (grey t-shirt and blue jeans), and which was a reasonably accurate description of Goston. On this record, there was ample evidence introduced at trial to connect petitioner to the crime beyond a reasonable doubt. It would be improper for this Court to reassess the credibility of these witnesses absent a showing that the jury's determination was unreasonable. *See Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (stating that federal habeas corpus courts have no license to "redetermine credibility of witnesses whose demeanor has been observed by the state trial court, not by them").

As to the insufficiency of evidence regarding Goston's possession of a weapon, Officer

Heitzhaus testified that he found Stines' wallet laying on the ground in the alley next to the store, inches away from a loaded pistol. T.156-57, 177-78. Stines testified that the gun introduced into evidence at trial was of the same color and style as the one used by Goston during the robbery. Viewing this evidence in the light most favorable to the prosecution, the jury reasonably could have inferred infer that the gun found next to Stines' wallet was the gun that had been used in the robbery by Goston. In other words, the Court cannot say that the jury was irrational in finding beyond a reasonable doubt that Goston possessed a gun which he used during the robbery. Accordingly, habeas relief is not warranted on Goston's claims concerning the sufficiency of the evidence against him.

**4.      Failure to charge lesser included offenses**

Goston contends that the trial court erred in denying defense counsel's request that the jury be charged on third degree robbery as a lesser included offense of first degree robbery because there was no scientific evidence linking the gun recovered near the crime scene to him. On direct appeal, the Appellate Division upheld the trial court's ruling, stating that there was "no reasonable view of the evidence that a deadly weapon–here, a loaded firearm–was not used to commit the [robbery]" and thus there was "no reasonable view of the evidence to support a finding that defendant committed the lesser offense but not the greater[.]" *People v. Goston*, 9 A.D.3d at 906 (quotations and citations omitted; alteration in original). Respondent argues correctly that this claim is not cognizable on federal habeas review.

Although the Supreme Court has held that due process requires a trial court to submit jury instructions regarding lesser-included offenses in capital cases, it "has expressly declined to consider whether such a requirement would apply in the non-capital context." *Jones v. Hoffman*,

86 F.3d 46, 48 (2d Cir. 1996) (citing *Beck v. Alabama*, 447 U.S. 625, 637-38, 638 n. 14 (1980); *Gilmore v. Taylor*, 508 U.S. 333, 361 (1993) (Blackmun, J., dissenting)). In *Jones*, the Second Circuit observed that "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule[.]" *Id.* For that reason, the Second Circuit held that *Teague v. Lane*, 489 U.S. 288 (1989),[3] precluded its consideration of the issue. *Id.* (citing *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995) ("With the intercircuit split on whether the lack of a lesser included offense instruction in a noncapital case presents constitutional error, any finding of constitutional error would create a new rule, inapplicable to the present case under *Teague*.")). The Second Circuit further held that neither of the two narrowly drawn exceptions to *Teague* applied since the lesser- included-offense rule "does not decriminalize a particular class of conduct, nor does it fall within that small core of 'watershed' rules requiring the observance of certain procedures that are implicit in the concept of ordered liberty." *Id.* (citing *Andrews v. Deland*, 943 F.2d 1162, 1187 (10th Cir. 1991) ("The rule [in *Beck*] is not such a 'watershed' rule as to fit within the second exception."), *cert. denied*, 502 U.S. 1110 (1992)). Thus, the Second Circuit in *Jones* effectively concluded that a claimed error in failing to include a lesser offense instruction in a non-capital case is not a cognizable claim in a habeas corpus proceeding. *Accord, e.g.*, *Sullivan v. O'Keefe*, No. 00 CIV. 2292(SAS), 2000 WL 1072304, at *5 (S.D.N.Y. Aug. 2, 2000). Goston's claim therefore is precluded from habeas review.

---

[3] In *Teague*, the Supreme Court adopted the so-called "non-retroactivity doctrine" applicable on habeas review, holding that that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."

**5.      Erroneous denial of petitioner's C.P.L. § 330.30 motion**

Prior to sentencing, Goston moved to set aside the verdict pursuant to C.P.L. § 330.30(1) on the basis that the prosecution committed a so-called "*Rosario* violation" by failing to disclose the grand jury minutes of the testimony given by the two victims, Stines and Speight, prior to trial. When this issue came to light during the trial, the prosecutor conceded that it was error but argued that a mistrial was not warranted because the material was disclosed during trial. The trial court chastised the prosecutor, stating that his failure to disclose the material prior to trial was a "huge mistake." The trial court permitted defense counsel to review the material and to recall Stines for further cross-examination, T.160-63, 166-68, and allowed defense counsel to have the weekend to decide whether he wanted to call Phyllis Dixon ("Dixon"), whose name appeared in notes. T.167.  Defense counsel elected to recall Stines but did not ask for additional time to locate Dixon.

Presented with Goston's post-verdict C.P.L. § 330.30 motion raising the *Rosario* issue, the trial court ruled that although the disclosure of this *Rosario* material was belated, the defense was not prejudiced thereby, as trial counsel was permitted time to review the grand jury minutes and to recall Stines for the purpose of further cross-examination. Accordingly, the trial court found "no prejudice to the defendant during the trial as to that *Rosario* issue."

Respondent correctly argues that Goston's claim relating to the prosecutor's *Rosario* violation is not a federal constitutional claim cognizable on habeas review. *See Lyon v. Senkowski*, 109 F. Supp.2d 125, 139 (W.D.N.Y. 2000); *Sutherland v. Walker*, 1999 WL 1140870, at *9 (S.D.N.Y. Dec. 10, 1999). This is because a *Rosario* claim derives solely from a New York state law right.  *Lyon,* 109 F. Supp.2d at 139; *see also Copes v. Schriver*, 1997 WL

-18-

659096, at *4 (S.D.N.Y. Oct. 22, 1997) (*Rosario* violation does not establish a constitutional violation). The New York Court of Appeals held in *Rosario* that the prosecution must disclose *any* prior statement of one of its witnesses, regardless of whether it is favorable to the accused. The prosecution's disclosure requirements as set forth in *Rosario* are more expansive than those later defined by the Supreme Court in *Brady* and its progeny. *See Lyon*, 109 F. Supp.2d at 139. Under *Brady v. Maryland*, the prosecutor is obligated to disclose material evidence that is favorable to the accused, because it is either exculpatory or impeaching. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."). Thus, to the extent that *Rosario* exceeds federal constitutional requirements, it defines state law, and the prosecutor's failure to turn over *Rosario* material is not cognizable on federal habeas review. *Lyon*, 109 F. Supp.2d at 139; *see also Green v. Artuz*, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) (*citing United States ex. rel. Butler v. Schubin*, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (2d Cir. 1975)).

Even if the Court were to assume that Stines' grand jury minutes constituted *Brady* material, there was not a "suppression" of the material simply because defense counsel did not receive it prior to trial. The Second Circuit has explained that the Constitution requires neither that *Brady* material be disclosed well in advance of trial nor that a new trial automatically be granted when disclosure is made on the eve of (or even during) "the midst of the pressures and paranoias or trial." *Leka v. Portuondo*, 257 F.3d 89, 100, 103 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in

terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated."). A "suppression" under the meaning of *Brady* and its progeny only occurs where the defendant was deprived of a meaningful opportunity to use the favorable evidence. *See id.* Such was not the case here, as defense counsel was given ample time to review the belatedly disclosed grand jury minutes, to recall the witness for further cross-examination, and to decide whether he wished to call another witness whose name was noted in the grand jury minutes. Because Goston cannot demonstrate that the evidence was "suppressed" as has been defined in the context of *Brady* and its progeny, Goston also does not have a viable *Brady* claim based on the belated disclosure of the grand jury minutes.

**6.    Ineffective assistance of trial counsel**

    **a.    Legal standard**

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second, a petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if a petitioner is

unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason

for a court deciding an ineffective assistance claim to . . . address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697.

### b.    Alleged ineffectiveness

The first claim of ineffective assistance of counsel revolves around the "issue of the

property report" concerning the items and money taken from the victim Stines; Goston contends

that "counsel failed to challenge the sufficiency of the document filed in evidence."   Docket No.

14-2 at 10-11. Goston asserts that the "[t]he evidence in the case at bar that a robbery has been

committed is contained in the property report, (See Ex:B), . . . which indicates that three ten

dollar bills, and seven one dollar bills were taken but does not specify any serial numbers, and a

separate property report that merely states that a men's black leather wallet was released to

owner that contained a New York State drivers license, and a number of credit cards[4] leading one

to believe the items in both reports were merely lost and not the fruits of a robbery because of

the manner in which it was returned." *Id.* at 12. Goston also claims that there was a violation of

New York Penal Law § 450.10, which sets forth the procedure for returning stolen property

while a criminal proceeding is pending. Apparently, all of the of the items described above that

allegedly were stolen from Stines were returned, although it is not clear when they were

returned.[5] *See* Petitioner's Exhibit B (Docket No. 14-2). According to Goston, trial counsel

thereby allowed him "to be found guilty of a crime that there is absolutely no evidence that a

---

[4]     The currency was found on Goston's person at the time of his arrest. The wallet was found
discarded, next to the weapon alleged to have been used in the robbery, on the street, near the store that was robbed.

[5]     The property report is dated July 28, 1999, the date of the robbery. The police apparently had
Stines sign each page of the property report, indicating that he received his belongings, but there is no date next to
his signature. *See* Petitioner's Exhibit B (Docket No. 14-2).

robbery ever occurred."

The Court has attempted to decipher Goston's papers, and it appears that he is claiming that trial counsel was ineffective in failing to argue that the prosecution failed to comply with the notice provisions of Penal Law § 450.10.[6]  It is not clear whether the prosecutor failed to serve the requisite notice, or whether he served the notice and trial counsel failed to object or ~~to~~ request and inspection of the property. Even assuming that the prosecution failed to follow the written notice requirements of Penal Law § 450.10(1) prior to releasing the stolen property to its owner, "[n]oncompliance alone is insufficient to require reversal[.]" *People v. Borders*, 163 A.D.2d 852, 558 N.Y.S.2d 767, 767 (App. Div. 4th Dept.) (citing N.Y. Penal Law § 450.10(10)),[7]

---

[6]    At the time the events in this case occurred, Penal Law § 450.10 provided, in pertinent part, that:

"1. When property, other than contraband, including but not limited to the items subject to the provisions of sections 410.00, 415.00, 420.00 and 420.05 of this chapter, alleged to have been stolen is in the custody of a police officer or a peace officer, it must be held subject to the order of the court in which the criminal action is pending or, if a request for its release from such custody is made, until the prosecutor has notified the defendant or his attorney of such request and both the prosecution and defense have been afforded a reasonable opportunity for an examination of the property to determine its true value and to produce or reproduce, by photographs or other identifying techniques, legally sufficient evidence for introduction at trial.

"2. Upon expiration of a reasonable time for the completion of the examination which in no event shall exceed thirty days from the date of receipt by the defense of the notice of request for return of property as provided in subdivision one hereof, the property shall be released to the person making such request after satisfactory proof of such person's entitlement to the possession thereof. The court where appropriate may condition release of the property upon an order that the property be kept intact and available for production if necessary during the pendency of the criminal action. Notwithstanding the foregoing, upon application by either party with notice to the other, the court may order retention of the property if it determines that retention is necessary in the furtherance of justice".

N.Y. Penal Law § 450.10.

[7]    "Where there has been a failure to comply with the provisions of this section, and where the district attorney does not demonstrate to the satisfaction of the court that such failure has not caused the defendant prejudice, the court shall instruct the jury that it may consider such failure in determining the weight to be given such evidence and may also impose any other sanction set forth in subdivision one of section 240.70 of the criminal procedure law; provided, however, that unless the defendant has convinced the court that such failure has caused him undue prejudice, the court shall not preclude the district attorney from introducing into evidence the property, photographs, photocopies, or other reproductions of the property or, where appropriate, testimony concerning its value and condition, where such evidence is otherwise properly authenticated and admissible under the rules of evidence. Failure to comply with any one or more of the provisions of this section shall not for that reason alone be grounds for dismissal of the accusatory instrument." N.Y. Penal Law § 450.10(10).

*appeal denied*, 76 N.Y.2d 891, 562 N.E.2d 878, 561 N.Y.S.2d 553 (N.Y. 1990).  Rather, it is

within the "sound discretion of the trial court to determine an appropriate remedy," keeping in

mind that "the drastic remedy of dismissal should not be invoked where less severe measures can

rectify the harm done by the loss of evidence." *People v. Kelly*, 62 N.Y.2d 516, 520-21, 478

N.Y.S.2d 834, 467 N.E.2d 498 (N.Y. 1984). Moreover, in fashioning an appropriate remedy,

"the overriding concern must be to avoid any prejudice to the defendant[.]" *Id.*

      In the present case, it does not appear to this Court that Goston was prejudiced by the

alleged Penal Law § 450.10 violation, since this was not a case where "the essence of the crime

charged was the identity and value of the allegedly stolen property[.]" *People v. Ruiz*, 121

A.D.2d 661, 504 N.Y.S.2d 54 (App. Div. 2d Dept. 1986) (reversing conviction on charge of

possession of stolen property in the first degree where the prosecution failed to preserve the

allegedly stolen property which formed the basis for the defendant's conviction). Thus, to the

extent that Goston is arguing that trial counsel could have secured a dismissal of the charge of

robbery on this basis, the Court rejects that contention. *See*, *e.g.*, *People v. Griffin*, 132 A.D.2d

670, 518 N.Y.S.2d (App. Div. 2d Dept. 1987) (finding that trial court did not abuse its discretion

in denying the defendant's motion to dismiss the indictment in its entirety based on Penal Law §

450.10 violation where "the defendant suffered no prejudice as a result of the return of the

property since the defendant conceded that the robbery occurred but argued that he did not have

any knowledge of it"). Here, the defense conceded that Stines had been robbed, and that money

had been taken from him; the theory of the defense was mistaken identity–that Goston was not

the robber. Goston's defense counsel argued to the jury that there was a report broadcast of

another suspect in the vicinity, but that person was never found. After the police officer testified

that the money found on Goston's person was "crumpled," defense counsel also attempted to undermine the significance of that fact, forcing the police officer to concede that the presence of crumpled-up money in one's pocket does not necessarily mean that the person has undertaken a robbery. T.315-16. Thus, the Court cannot find that Goston was prejudiced by any violation of Penal Law § 450.10. Likewise, Goston was not prejudiced by trial counsel's failure to raise this as a potential issue as there is no indication that the outcome of the trial would have been different, but for trial counsel's alleged omission in this regard.

Goston next contends that trial counsel was ineffective in failing "to adequately prepare for trial by not reviewing defendant's accusatory instrument." Docket No. 14-2 at 14. He contends that the felony complaint filed in his case did not comply with C.P.L. § 100.15(1), which states that a "felony complaint must . . . specify the name of the court with which it is filed and the title of the action, and must be subscribed and verified by a person known as the 'complainant.'" N.Y. Criminal Law § 100.15(1).

Under New York law, a felony complaint is "'sufficient on its face when: (a) [i]t substantially conforms to the requirements prescribed in section [C.P.L.] 100.15; (b) [t]he allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument[.]'" *Fitzpatrick v. Rosenthal*, 29 A.D.3d 24, 28, 809 N.Y.S.2d 729, 732 (App. Div. 4th Dept. 2006) (quoting N.Y. Crim. Proc. Law § 100.40(4)). As required by C.P.L. § 100.15(1), the felony complaints were signed by the complainant, Stines, under penalties of perjury. *See* Petitioner's Exhibit A (Docket No. 14-1). The felony complaint specified the title of the action, but it did not specify the name of the court

-24-

in which it was being filed. That is the only possible deficiency that the Court can see in the document. However, a "Divestiture to Superior Court" was filed on August 4, 1999, indicating that the felony complaint was being transmitted to Erie County Court. *See id.* Thus, even assuming that felony complaint was insufficient on its face, which this Court does not find to be the case, any insufficiency appears to have been cured by the divestiture filed by the prosecution. *See*, *e.g.*, *People v. Casey*, 95 N.Y.2d 354, 717 N.Y.S.2d 88 (N.Y. 2000) (a court need not dismiss a felony complaint on the basis of insufficiency and may allow the prosecution time to formally cure, if they demonstrate both an intention, and an ability, to do so).

After reviewing the felony complaints filed in this case, the Court cannot discern the basis on which Goston believes that the outcome of his trial would have been different had trial counsel objected to the felony complaints. Thus, Goston was in no way prejudiced by any "failure to review" the felony complaint by trial counsel.

Finally, Goston faults trial counsel on the basis that he "refused an alibi witness," *i.e.*, a woman named Lisa Morin ("Morin"). In support of this claim, Goston relies upon an affidavit submitted by Morin almost three years after Goston was arrested. Morin states that she saw Goston from 6:00 p.m. until 6:45 p.m. on the day of the robbery, and therefore he could not have committed the robbery, which occurred at about 6:00 p.m. According to Morin, she observed Goston in Dewey Park playing basketball and being "intimate" with another female. Goston did not see her, and she did not inform him that she had observed him. Morin avers that she did not come forward with this information earlier because she was angry at Goston for being "intimate" with this other woman; apparently, Morin and Goston were in a relationship at that time. Morin also explained that she did not come forward because she did not think that Goston would be

-25-

convicted. Morin then qualified that statement, claiming that she *did* contact Goston's attorney to speak to him about the matter; however, she did not specify the date of the contact, so there is no way of determining the timing of the call in relation to the status of Goston's criminal proceeding. According to Morin, defense counsel did not return her call or otherwise contact her.

When Goston submitted Morin's affidavit in support of his motion for reconsideration of the denial of his C.P.L. § 440.10 motion, the trial court found that it did "not tend to substantiate that prior to the entry of judgment, defendant's attorney knew that Morin was a potential alibi witness." August 18, 2005 County Court Order Denying Reconsideration at 3. Therefore, the court found, there was no basis to conclude that defense counsel should be faulted for not interviewing Morin or pursuing the matter further. *Id.* The Court agrees with the motion court–absent any indication as to when Morin supposedly contacted defense counsel, there is no basis for concluding that defense counsel was aware of Morin as a potential witness. Respondent also argues that even if counsel had learned about Morin prior to trial, he "was not obligated to move to file a late notice of alibi" since the "decision to call any witness is a matter generally left to counsel." Respondent's Memorandum of Law at 23 (Docket No. 16). Respondent points out that "petitioner did not explain that he told counsel that he was playing basketball, who he had been playing basketball with, or who the other woman was." The Court agrees that these factors all tend to undermine the credibility of Goston's claim that Morin was a potential alibi witness. On these facts, the Court cannot find that defense counsel was professionally unreasonable with respect to alleged witness Morin. Even assuming that defense counsel knew about Morin prior to trial, the Court cannot find that there is a reasonable probability that the outcome of Goston's trial would have been different had defense counsel called her to testify about his basketball-

playing alibi. As a person who was involved with Goston in a romantic relationship, Morin

clearly was an interested witness, and the jury easily could have rejected her testimony in favor

of the consistent and credible testimony offered by the two robbery victims. Thus, the Court

cannot find that Goston was prejudiced.

## CONCLUSION

For the reasons stated above, petitioner Darrell Goston's petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner

has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a

certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:       November 22, 2006
             Rochester, New York.

-27-